## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 22-CV-60573-RUIZ/STRAUSS

**GULF BUILDING, LLC,**

     Plaintiff,

v.

**PHILADELPHIA INDEMNITY**
**INSURANCE COMPANY,**

     Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Verified Motion for Attorneys' Fees and Costs (the "Motion") [DE 153], filed on October 26, 2023.  The Motion has been referred to me to take all action as required by law.  [DE 154].  I have reviewed the Motion and all attachments thereto, Defendant's Response, [DE 158], Plaintiff's Reply, [DE 165], and the record in this case.  For the reasons discussed herein, I respectfully **RECOMMEND** the Motion, [DE 153], be **GRANTED-IN-PART** and **DENIED-IN-PART**.

### BACKGROUND

Plaintiff filed its Complaint on March 17, 2022.  [DE 1].  The Complaint alleged Defendant breached its contract with Plaintiff when it failed to perform as provided in the signed Performance Bond.  After conducting a bench trial, the Court found Defendant breached the Performance Bond. [DE 146] at 3.  The Court awarded Plaintiff the penal sum of the bond amount, totaling $248,000.00, while reserving jurisdiction to determine entitlement "to and the amount of any attorneys' fees, costs, and pre-judgment interest."  [DE 147].  In the Motion, Plaintiff seeks $489,417.14 in attorneys' fees and costs and a further $143,935.27 in pre-judgment interest on the

judgment amount and for attorneys' fees paid.  [DE 153] at 2.  Defendant contends Plaintiff has not exercised proper billing judgment and that the Court should greatly reduce Plaintiff's request. [DE 158].

## ANALYSIS

### I.      Entitlement to Attorneys' Fees

#### A.  Entitlement by Statute

Plaintiff correctly asserts it is entitled to attorneys' fees under sections 627.428 and 627.756, Florida Statutes.  Pursuant to section 627.428(1), Florida Statutes, upon the rendition of a judgment by any court in Florida against an insurer and in favor of named insured, the trial court shall award "a reasonable sum as fees or compensation for the insured's . . . attorney prosecuting the suit in which the recovery is had." § 627.428(1), Fla. Stat. (2022).  In turn, section 627.756, Florida Statutes, states that section 627.428 "applies to suits brought by owners, contractors, subcontractors, laborers, and materialmen against a surety insurer under payment or performance bonds written by the insurer under the laws of this state to indemnify against pecuniary loss by breach of a building or construction contract." § 627.756(1), Fla. Stat. (2022).  "Attorney's fees are 'mandatory' for parties who fall within section 627.428(1)." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *20 (11th Cir. Aug. 30, 2023) (quoting *Citizens Prop. Ins. Corp. v. Bascuas*, 178 So. 3d 902, 904 (Fla. 3d DCA 2015)).

Here, Plaintiff, as a contractor, obtained a final judgment in its favor against Defendant, a surety insurer.  [DE 147].  The judgment stems from Plaintiff's action to recover for Defendant's breach of a performance bond which arose out of, among other things, Defendant's failure to indemnify Plaintiff.  [DE 146].  Accordingly, Plaintiff is entitled to its attorneys' fees pursuant to section 627.756(1), Florida Statutes. *See* § 627.756(1), Fla. Stat.; *Sos*, 2023 WL 5608014, at *20.

### B.  Entitlement By Contract

Plaintiff further correctly argues it is entitled to attorneys' fees under the Performance Bond between Plaintiff, Therma Seal Roof Systems[1], and Defendant.  "Under Florida law, absent a specific statutory or contractual provision, a prevailing litigant has no general entitlement to attorney's fees."  *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018).  Thus, "if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable."  *Id.* at 1336 (quoting *Sholkoff v. Boca Raton Cmty. Hosp., Inc.*, 693 So. 2d 1114, 118 (Fla. 4th DCA 1997)).

Courts throughout Florida have routinely utilized "the well-established doctrine of incorporation by reference to impose liability on a performance bond surety" because the purpose of performance bonds is "to insure performance in accordance with the terms of the respective subcontracts."  *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1275 (11th Cir. 2003).  In this case, section 1 of the Performance Bond states "[t]he Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference."  [DE 129–6].  That incorporated contract contained the following provision:

> **Attorney's Arbitrator's and Special Master Fees.**  Subcontractor and GULF agree that in the event arbitration proceedings or litigation is initiated by either party, the non-prevailing party shall be liable for all arbitrator's fees and costs, attorney's fees, special master fees, and court costs incurred by the prevailing party at all levels of proceedings or negotiations, including fees and costs incurred in

---

[1] Plaintiff and Therma Seal entered into a subcontract agreement in which Therma Seal agreed to provide all required material, labor, equipment, permits, and supervision required to complete the roofing, flashing, sheet metal, and lightweight insulating concrete work for 550 Office Building and 550 Parking Garage (the "Project").  [DE 146] at 2.  Defendant issued a performance bond jointly and severally guaranteeing the full and faithful performance of Therma Seal's Subcontract obligations.  *Id.*

appellate proceedings.  For the purposes of the Agreement, a party shall not be considered as "prevailing party" if its recovery shall be less than 50% of its claim amount.

[DE 129–5].

When Defendant signed the Performance Bond, it was not merely guaranteeing the Project would be completed, but rather, Defendant guaranteed performance of the terms of the underlying subcontract.  *See Am. Home Assur. Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 197 (Fla. 1992); *see also Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1264 (M.D. Fla. 2002) ("The language in a performance bond must be construed in harmony with the purpose of the bond, and the purpose is to guarantee the completion of the contract upon default."). Because the attorney's fees provision is unambiguous, in that it clearly states the non-prevailing party shall be liable for attorney's fees, and Plaintiff recovered the full amount of the Performance Bond, Plaintiff is entitled to the contractually prescribed attorneys' fees.[2]

Additionally, Defendant posits that, even if the Court finds that the incorporated contract applies to Plaintiff's fee claim, the contract does not permit either party to recover for "fees on fees."  [DE 158] at 16.  Plaintiff does not appear to dispute that "statutory fees may be awarded for litigating the issue of entitlement to attorney's fees but not the amount of attorney's fees."  *See State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993); *see also McMahan v. Toto*, 311 F.3d 1077, 1085 (11th Cir. 2002).  However, a broad contractual provision may permit a party to recover fees for fees.  *See Pro. Plaza Condo. Ass'n, Inc. v. Landmark Infrastructure Holding*

---

[2] Defendant asserts that Plaintiff only pled statutory entitlement to attorneys' fees and now, for the first time, seeks contractual entitlement to attorneys' fees as well.  [DE 158] at 16.  This argument is unavailing as Federal Rule of Civil Procedure 54(c) specifically states that every final judgment, except default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c); *see also Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000).

*Co., LLC*, No. 20-20707-CIV, 2022 WL 2819667, at *9 (S.D. Fla. June 14, 2022), *report and recommendation adopted*, 2022 WL 2817879 (S.D. Fla. July 19, 2022); *see also Sheet Metal Workers' Int'l Ass'n Loc. 15, AFL-CIO v. L. Fabrication, LLC*, 237 F. App'x 543, 549–50 (11th Cir. 2007) (finding contractual provision broad enough to encompass fees on fees when it stated "[i]f the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees"); *Waverly at Las Olas Condo. Ass'n, Inc. v. Waverly Las Olas, LLC*, 88 So. 3d 386, 388–89 (Fla. 4th DCA 2012) (affirming fees on fees award when contract provision "provided for an award of fees for '**any** litigation between the parties'").

The contract provision in this instance instructs that "the non-prevailing party shall be liable for all . . . attorney's fees . . . and court costs incurred by the prevailing party at all levels of proceedings." [DE 129–5]. That language, in the past, has been deemed sufficiently broad enough to include fees on fees. *See Sheet Metal Workers'*, 237 F. App'x at 549–50; *Waverly*, 88 So. 3d at 388–89. Lastly, Defendant is incorrect when it asserts that the "District Court 'level of proceeding' for this dispute concluded when the Court entered Final Judgment, and the parties have since advanced to the appellate 'level of proceedings.'" [DE 158] at 17. The District Court's Final Judgment Order specifically reserved jurisdiction "to determine entitlement to and the amount of any attorneys' fees, costs, and pre-judgment interest." [DE 147]. Consequently, Plaintiff is entitled to its attorneys' fees, including fees on fees, under the Performance Bond.

## II.   Reasonableness

When determining the reasonableness of attorneys' fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The result of that calculation is known as the lodestar, s*ee id.* at 1301–02, which is

"strongly presumed to be reasonable," *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (quoting *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993)).

While there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve, the Eleventh Circuit has instructed the lower courts to consider the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1089 (11th Cir. 2022). The courts must consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006).

The party seeking an award of fees has the burden of documenting the hours incurred and the applicable hourly rates. *Norman*, 836 F.2d at 1303. Fee applicants are required to exercise billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary. *Am. C.L. Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Entries for clerical or administrative tasks should also be excluded. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

### A.  Reasonable Hourly Rate

Plaintiff seeks $484,298.50 in attorneys' fees. [DE 153]. This figure is from a combination of work from three separate law firms. First, Plaintiff seeks to recover attorneys' fees from work Smith, Currie & Hancock, LLP ("Smith Currie") provided. This is illustrated in the graph below:

| Name | Position | Years of Experience | Requested Amount | Defendant's Proposed Amount |
|---|---|---|---|---|
| Joseph R. Young | Partner | 12 | $450.00 | $450.00 |
| Cameron Alexander | Associate | 2 | $325.00 | $325.00 |
| Kayla M. Wong | Associate/Law Clerk | Less than a year | $375.00 | $325.00/$100.00[3] |

---

[3] Defendant notes that some of the time entries attributed to Wong were prior to her admittance to the Florida Bar. Thus, Defendant proposes all of Wong's work prior to admittance be charged at their proposed paralegal and other non-attorney rate while all her entries after her admittance be charged as an associate.

| John M. DeJager | Associate | 5 | $390.00 | $325.00 |
|---|---|---|---|---|
| Peter K. Buckley | Associate | 2 | $325.00 | $325.00 |
| Christian Alvarez | Litigation Support Specialist | 15 | $285.00 | $100.00 |
| Loraine Cherubin | Paralegal | 23 | $220.00 | $100.00 |

As discussed herein, I recommend approval of Young's, Alexander's, and Buckley's rate, reduction of Wong's and DeJager's rate, and a reduction in Alvarez's and Cherubin's rate.

Because Plaintiff is the party seeking an award of fees, Plaintiff has the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303). "A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Id.* at 436 (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Id.* at 437 (citing *Cullens v. Ga. Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994)).

According to Young's affidavit attached to the Motion, [DE 153–1], Young is a partner at Smith Currie, has been practicing law in Florida since 2011, is board certified in construction law, and was lead counsel for Plaintiff during this matter. Based on my own knowledge regarding reasonable hourly rates in this community and my consideration of applicable law, and given Young's background, experience, and qualifications, I find his requested rate of $450.00 per hour to be reasonable.[4]

Per Alexander's and Buckley's resumes, which were attached to the Motion, and Young's affidavit, they are second-year associates and licensed to practice law in Florida. Because they are

---

[4] Additionally, Defendant does not oppose Young's hourly rate.

recent attorneys and are not board certified in any field, and especially considering Defendant does not oppose the requested rate, I find their proposed rate of $325.00 reasonable.

DeJager is a fifth-year associate licensed to practice in Florida. Plaintiff asserts DeJager's hourly rate of $390.00 is reasonable. Defendant contends DeJager's hourly rate should only amount to $325.00. Despite the fact that Plaintiff bears the burden to produce sufficient evidence in support of its requested amount, Plaintiff has merely attached DeJager's resume, which is scant on additional information, and no other supporting material to bolster its request. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."). However, it is reasonable that DeJager, as a fifth-year associate with more experience than Alexander and Buckley, should receive a rate higher than those second-year associates. Since Defendant does not oppose a rate of $325.00 for a second-year associate, I find it is reasonable to award Plaintiff $350.00 per hour for DeJager's work.

Next, the Court must address Wong's hourly rate. As an initial matter, the Court notes that some of Wong's billed hours encompass time when she was not a licensed attorney. Wong's time billed while she was working as a law clerk should reflect the hourly rate associated with paralegals and other non-attorneys addressed below. For the time Wong billed as an attorney, Plaintiff seeks $375.00. That rate is excessive. Wong only became a licensed member of the Florida Bar a little more than a month before Plaintiff filed its Motion. Plaintiff provides no explanation as to why Wong's hourly rate is more than the two second-year associates, for whom Plaintiff only sought $325.00. The Court cannot find it reasonable to award an attorney who had only practiced for a little over a month $325.00, even with Defendant's agreement to a rate of $325.00 for Wong's

hours billed while she was a licensed attorney.[5]  Thus, I find it appropriate to reduce Wong's hourly rate to $250.00 for work performed as a licensed attorney.

Last, the Court must address Smith Currie's rates for its paralegal and non-attorney work. "[F]ees for paralegal or non-attorney work are recoverable 'to the extent that the [professional] performs work traditionally done by an attorney.'" *TYR Tactical, LLC v. Productive Prod. Enter., LLC*, No. 15-CIV-61741, 2018 WL 3110799, at *12 (S.D. Fla. Apr. 11, 2018), *report and recommendation adopted,* 2018 WL 3109624 (S.D. Fla. Apr. 30, 2018) (quoting *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (second alteration in original)).  Plaintiff asserts its paralegal rate of $220.00 and litigation support specialist rate of $285.00 is reasonable.  Defendant contends those rates should both be reduced to $100.00.

Young's affidavit states that Cherubin is a paralegal with twenty-three years of experience with construction law while Alvarez is a litigation support specialist with more than fifteen-years of experience relating to e-discovery.  [DE 153–1].  The affidavit and attached exhibits provide no other support for those rates.  A review of the caselaw within this District reveals that the rates sought for Cherubin and Alvarez are unreasonable.  *See Dental Fix Rx, LLC v. Moore*, No. 17-62218-CIV, 2022 WL 358349, at *3 (S.D. Fla. Jan. 21, 2022), *report and recommendation adopted,* 2022 WL 356463 (S.D. Fla. Feb. 7, 2022) (awarding $95.00 per hour for paralegals); *Burgos v. SunTrust Bank, N.A.*, No. 13-21197-CIV, 2020 WL 2299937, at *9 (S.D. Fla. Mar. 31, 2020), *report and recommendation adopted,* 2020 WL 2299936 (S.D. Fla. May 7, 2020) (finding $100.00 rate for paralegal reasonable); *Cap. One N.A. v. Mia. Motor Sports, LLC*, No. 18-61942-

---

[5] *See Turner v. Hollywood Rest. Grp., LLC*, No. 08-61068-CIV, 2008 WL 11332075, at *2 (S.D. Fla. Nov. 17, 2008), *report and recommendation adopted,* 2008 WL 11333548 (S.D. Fla. Dec. 10, 2008) ("The Court has an independent duty to ensure that any award of attorneys' fees is reasonable.")

CIV, 2019 WL 2106106, at 3 (S.D. Fla. Apr. 4, 2019), *report and recommendation adopted,* 2019 WL 2105878 (S.D. Fla. Apr. 24, 2019) (reducing legal research librarian rate down to $100.00 from $195.00); *Sevares v. Am. Pipeline Constr., LLC,* No. 1:22-CV-21233-KMM, 2023 WL 4930405, at *1 (S.D. Fla. Aug. 2, 2023) (agreeing that paralegal rate should be reduced from $150.00 to $125.00). Consequently, Cherubin's and Alvarez's rates (as well as Wong's rate for work performed prior to her admittance to the Florida Bar) should be reduced to $125.00.

After the Court's review of the proposed rates and subsequent adjustments, the hourly rate for Smith Currie's attorneys and non-attorneys in this matter should reflect as follows:

| Name | Requested Amount | Adjusted Amount |
|---|---|---|
| Joseph R. Young | $450.00 | $450.00 |
| Cameron Alexander | $325.00 | $325.00 |
| Kayla M. Wong | $375.00 | $250.00/$125.00 |
| John M. DeJager | $390.00 | $350.00 |
| Peter K. Buckley | $325.00 | $325.00 |
| Christian Alvarez | $285.00 | $125.00 |
| Loraine Cherubin | $220.00 | $125.00 |

Plaintiff next seeks to recover attorneys' fees for work done by professionals at Conrad & Scherer, LLP. That request is broken down as follows:

| Name | Position | Years of Experience | Requested Amount | Defendant's Proposed Amount |
|---|---|---|---|---|
| William Scherer, Jr. | Partner | 50 | $916.00[6] | $450.00 |
| Kirk vonHilsheimer | Associate | 3 | $300.00 | $300.00 |
| Alejandro Maya | Paralegal | 10 | $240.00 | $100.00 |
| Edd Kreiling | Paralegal | 13 | $240.00 | $100.00 |

As discussed herein, I recommend approval of vonHilsheimer's rate, a reduction of Scherer's rate, and a reduction in Maya's and Kreiling's rate.

---

[6] In his affidavit, [DE 153–2] at 4, Scherer states he billed at $916.00. However, the numbers Scherer and Plaintiff provided this Court within their summary charts total $916.92. [DE 153] at 3.

Scherer is the founding and managing partner at Conrad & Scherer, LLP. [DE 153–2]. He was admitted to the Florida Bar in 1973 and has litigated over 100 trials. *Id.* He began his career with clerkships for the Indiana Supreme Court and a judge of this District. *Id.* He has been involved in multiple high-profile cases within this District and garnered a plethora of accolades. Scherer is undoubtably a highly experienced and well-credentialed attorney who warrants a rate higher than the average firm partner.

Nevertheless, Plaintiff fails to carry its burden of showing that the requested hourly rate of $916.00 is reasonable. For one, "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437. Plaintiff has not established why this Court should award it Scherer's full rate when there was an abundance of attorneys with reasonable expertise in this field charging substantially lower hourly rates. Moreover, Plaintiff fails to satisfy its "burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman*, 836 F.2d at 1299. Plaintiff cites only one case where a court in this District found reasonable a rate anywhere close to the rate requested for Scherer here. *See CITGO Petroleum Corp. v. Petroleum Logistics Serv. USA, Inc.*, No. 22-MC-20762, 2022 WL 17718802, at *4–5 (S.D. Fla. Nov. 30, 2022), *report and recommendation adopted,* 2022 WL 17716483 (S.D. Fla. Dec. 15, 2022). Yet, even in that case, the court did not award a rate as high as $916, rejecting requested rates of $1,147.50, $988.13, and $935.00, for highly-qualified attorneys whose credentials included Supreme Court and appellate clerkships, board certifications, government service, and decades of experience. Rather, the court reduced rates for those attorneys to $850 and $825 per hour. *Id.*

Based on recent caselaw and my own knowledge in the field, a rate of $916.00 is unreasonable. Instead, a rate of $700.00 is more consistent with the highest rates awarded to highly experienced attorneys in this District. *See Fam. First Life, LLC v. Rutstein*, No. 22-CV-80243-AMC, 2023 WL 4207790, at *2–3 (S.D. Fla. June 7, 2023), *report and recommendation adopted*, 2023 WL 4202726 (S.D. Fla. June 27, 2023) (reducing counsel's hourly rate from $1,110.00 to $775.00); *Soc. Life Network, Inc. v. Peak One Opportunity Fund, L.P.*, No. 21-21373-CV, 2023 WL 5053985, at 4–6 (S.D. Fla. July 20, 2023), *report and recommendation adopted,* 2023 WL 5036606 (S.D. Fla. Aug. 8, 2023) (reducing partner's hourly rate from $950.00 to $700.00); *Roche Diagnostics Corp. v. Surplus Diabetic, Inc.*, No. 19-CV-61469, 2020 WL 8082367, at *6-7 (S.D. Fla. July 6, 2020), *report and recommendation adopted*, 2020 WL 8079821 (S.D. Fla. July 21, 2020) (reducing hourly rate of partner from $1,392.60 to $700.00); *Kleiman v. Wright*, No. 18-80176-CV, 2020 WL 1980601, at *4 (S.D. Fla. Mar. 17, 2020) (reducing hourly rate of Boies Schiller partner with over 25 years of experience from $1,050 to $675); *PDVSA US Litig. Tr. v. LUKOIL Pan Ams. LLC*, No. 1:18-CV-20818, 2020 WL 3052403, at *7-10 (S.D. Fla. Feb. 1, 2020), *report and recommendation adopted*, 2020 WL 996854 (S.D. Fla. Mar. 2, 2020) (reducing hourly rates of partners and shareholders, including one hourly rate as high as $1,404, to $625). Indeed, that rate is more consistent with the top rates awarded in the cases cited by Plaintiff, with the exception of *CITGO*. *See* [DE 153] at 13–14.

VonHilsheimer is a third-year associate at Conrad & Scherer, LLP. [DE 153–2]. His hourly rate is $300.00. Because Defendant does not oppose this rate and the amount is not so unreasonable as to be outside the realm of reasonableness, I find the hourly rate of $300.00 fair.

Maya's and Kreiling's paralegal rate of $240.00 should be reduced. As mentioned above when discussing Smith Currie's rates for their paralegals and non-attorneys, a reasonable rate for

those professionals in this District is $125.00.  *See Dental Fix Rx, LLC*, 2022 WL 358349, at *3; *Burgos*, 2020 WL 2299937, at *9; *Mia. Motor Sports, LLC*, 2019 WL 2106106, at 3; *Sevares*, 2023 WL 4930405, at *1.

After the Court's review of the proposed rates and subsequent adjustments, the hourly rate for Conrad & Scherer, LLP's attorneys and non-attorneys in this matter should reflect as follows:

| Name | Requested Amount | Adjusted Amount |
|------|------------------|-----------------|
| William Scherer, Jr. | $916.00 | $700.00 |
| Kirk vonHilsheimer | $300.00 | $300.00 |
| Alejandro Maya | $240.00 | $125.00 |
| Edd Kreiling | $240.00 | $125.00 |

Last, Plaintiff seeks to recover attorneys' fees from work performed by professionals at Kelley Kronenberg.

| Name | Position | Years of Experience | Requested Amount | Defendant's Proposed Amount |
|------|----------|---------------------|------------------|------------------------------|
| James Silver | Partner | 41 | $425.00 | $425.00 |
| Roxanna Aldama | Paralegal | 10 | $125.00 | $100.00 |

As discussed herein, I recommend approval of Silver's and Aldama's rates.

Silver is a partner at Kelley Kronenberg and has been a licensed attorney in Florida for over 41 years.  Since Defendant does not dispute Silver's rate and the caselaw – along with my own knowledge on the matter – corresponds with the rate, I find $425.00 to be reasonable. Additionally, for the reasons stated above, I find Aldama's paralegal rate of $125.00 to be reasonable as well.

## B.  Hours Reasonably Expended

I have carefully reviewed the time records of Plaintiff's attorneys and all other relevant materials.  Plaintiff submits that Smith Currie expended 1,060.6 hours while representing Plaintiff

in this matter.  [DE 153] at 3.  Defendant has identified several issues that it asserts demonstrate Smith Currie's poor billing judgment, specifically block-billing and billing hours for ministerial clerical tasks, for travel time, for fees-on-fees, for work during Plaintiff's first lawsuit, and for time spent in connection with an insurance claim.  Defendant, therefore, urges the Court to impose a 50% across-the-board reduction to Smith Currie's billed time.  Despite raising numerous individual objections to Smith Currie's total time billed, Defendant's own calculations reveal it does not oppose 796.4 hours of Smith Currie's billed time.[7]  [DE 158] at 36–38.  Thus, Defendant only specifically identifies issues with 264.2 hours, essentially 20% of all of Smith Currie's proposed hours, which is inconsistent with imposing a 50% across-the-board cut.  Consequently, this Court will not apply a 50% across-the-board reduction to Smith Currie's billed time.  Instead, a 10% across-the-board reduction is more appropriate.  This reduction reflects the fact that Smith Currie did engage in some inappropriate block-billing and other impermissible billings but not to the extent Defendant argues.  *See Bivins*, 548 F.3d at 1350.

Generally, when a court disallows or reduces hours, the court should specifically identify the reduced hours and explain the reduction.  *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  However, if a party submits a voluminous fee application, courts are permitted to apply an "across-the-board" reduction so long as the court articulates its reasoning for the reduction thereby enabling a meaningful review.  *See Caplan*, 36 F.4th at 1094.  In support of its request to recover Smith Currie's 1,060.6 billed hours, Plaintiff submitted Smith Currie's timesheets.  [DE 158–1].  Those records alone are 25 pages with over 250 separate time entries.  *Id.*  After reviewing Smith Currie's timesheets, and Defendant's objections, I find Smith Currie mostly engaged in

---

[7] The Court notes Plaintiff concedes it improperly sought to recover 0.9 hours Smith Currie billed for appellate work.  That time has been deducted in the final calculation.

proper billing judgment.  Nevertheless, there are some unreasonable hours billed which necessitate a 10% across-the-board reduction.

First, there are several instances of block-billing.  "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).  Notably, simply because "an attorney has included more than one task in a single billing entry is not, in itself, evidence of [impermissible] block-billing.  When those tasks are intertwined, including a thorough description of the activities performed clarifies, rather than obscures, the record." *Zendejas v. Redman*, No. 15-81229-CIV, 2019 WL 1429403, at *1 (S.D. Fla. Mar. 27, 2019) (quoting *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009) (alteration in original)).

Attorney Young engaged in block-billing several times throughout his representation of Plaintiff.  *See* [DE 153–1] at 28–36.  Yet, although there are numerous instances of "block-billing," only a handful rise to the level of impeding the Court's ability to meaningfully evaluate the reasonableness of the hours sought.  On most occasions where Young block-billed, he correctly differentiated the time spent on each task within that one blocked entry.  *See* [DE 153–1] at 34. For the others, he failed to differentiate the time spent on each task within the entry.  *See* [DE 153–1] at 35.  In one example, out of several similar entries, Young billed 13.8 hours on March 30, 2023, for "[a]ttend[ing] trial; meetings with client regarding trial strategy; further trial preparations." *Id.* at 36.  A review of the trial transcripts for that day revealed the time in court was from 9:05 a.m. until 4:39 p.m.  [DE 132].  Thus, around four to five hours remained undifferentiated and vague, making it impossible for the Court to properly evaluate the time spent on the remaining billed tasks for that entry.

Second, there are several occasions where Smith Currie billed hours for ministerial clerical tasks that litigation support specialist Alvarez performed.  One such example occurred on November 4, 2022, where Alvarez billed 0.5 hours to "[d]ownload from the electronic storage site files for the 2022-11-04 Responsive Documents from Certified Roofing Specialists folder to our online storage site."  [DE 153–1] at 24.  This is a classic scenario of billing for a "[p]urely clerical or secretarial task[] that require[s] no legal skill or training."  *Ortega*, 2017 WL 6026701, at *2. Notably, however, the time billed for such tasks only amounted to around 20 hours of time out of more than 1,000 hours billed.

Third, some of the billed travel time is unreasonable for a local counsel.  The Eleventh Circuit has yet to opine directly on the issue of travel expenses for local counsel within the same district, while the lower courts within the Eleventh Circuit have split on the issue.  *See St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005) (finding no abuse of discretion when district court reduced plaintiff's total hours claimed by 30 percent after plaintiff's attorney billed at full rates for non-legal tasks like travel and clerical functions); *Cuban Museum of Arts & Culture, Inc. v. City of Miami*, 771 F. Supp. 1190, 1192 (S.D. Fla. 1991) (permitting the recovery of travel time from Miami to Fort Lauderdale when the plaintiffs "were seeking an attorney with particular skill, reputation, and experience").  While some in-District travel expense may reasonably be recoverable, here, some reduction is warranted.  The Court recognizes that travel between Broward County and Miami can often be quite time-consuming and that litigants have little choice when a case filed in one division is assigned to a judge that sits in another division. Nevertheless, billing full attorney hourly rates for local travel time (particularly when some commuting time would be expended regardless of where a case is being tried), is not fully

reasonable.  And, as noted above, it is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary. *Barnes*, 168 F.3d at 428.

Defendant's remaining objections pertain to Smith Currie's billing hours for fees-on-fees, Plaintiff's first lawsuit, and time spent in connection with an insurance claim.  Regarding the fees-on-fees hours, Plaintiff is entitled to these fees in accordance with the Performance Bond that incorporated the subcontract between Therma Seal and Plaintiff.[8]  As to the first lawsuit claim, Defendant is correct that the 7.2 hours were billed prior to the filing of this lawsuit.  However, that lawsuit was dismissed for missing a filing deadline and Smith Currie's timesheets do not reflect a second entry for drafting another complaint or any work that was previously conducted prior to the filing of the operative complaint.  These 7.2 hours would have been spent in this present suit had the court not dismissed the original suit.  Instead of double billing, Plaintiff merely reused the already prepared complaint.  Last, the time spent in connection with an insurance claim was mostly reasonable as it related to Defendant's affirmative defenses of Plaintiff's duty to mitigate its damages.  *See* [DE 33].

Because Smith Currie's billable hours were mostly reasonable, and its time sheets sufficiently documented a majority of the tasks in each entry, I find it only necessary to perform a 10% across-the-board reduction in its hours.  The hours for Smith Currie's attorneys and non-attorneys reflect as follows:

| Name | Requested Amount | Adjusted Amount |
|---|---|---|
| Joseph R. Young | 525.2 | 472.7 |
| Cameron Alexander | 466 | 419.4 |

---

[8] Moreover, after reviewing the submitted timesheets, a substantial amount of time billed related to entitlement, not fees on fees, which recovery is permissible under section 627.756(1), Florida Statutes.  *See Palma*, 629 So. 2d at 834 (reaffirming a party could recover attorney's fees for litigating entitlement to fees).

| Kayla M. Wong | 24.7 | 12.5/9.7[9] |
|---|---|---|
| John M. DeJager | 3.3 | 3 |
| Peter K. Buckley | 1.1 | .9 |
| Christian Alvarez | 17.4 | 15.7 |
| Loraine Cherubin | 22 | 19.8 |

Plaintiff further submits that Conrad & Scherer, LLP expended 89.7 hours while representing Plaintiff in this matter. [DE 153] at 3–4. Defendant essentially challenges more than half of the billed hours as either improperly block billed, unnecessary, or purely ministerial clerical tasks. After carefully reviewing Conrad & Scherer, LLP's submitted timesheets, I find it appropriate to perform a 25% across-the-board reduction to all of Conrad & Scherer, LLP's hours.

First, paralegal Maya billed an hour for purely ministerial clerical tasks such as "[d]ownload[ed] all documents and create[ed] folder in RAWDOCS as well as profiled in ProLaw." [DE 153–2] at 9. Because these tasks require no legal training and are purely clerical, they are not recoverable. *See Ortega*, 2017 WL 6026701, at *2.

Second, there were several instances where attorney Scherer engaged in impermissible block-billing. For example, on April 3, 2023, Scherer billed twelve hours and described it as "[p]repare for and attend trial in Federal court in Miami, review fraud on creditors and FDPA and contact Bankruptcy attorney." [DE 153–2] at 11. These tasks are not so intertwined where they clarify the record rather than obscure it, and there is no reasonable mechanism for the Court to differentiate between the time Scherer required to perform each of the listed tasks. *See Williams*, 657 F. Supp. 2d at 1312.

Third, various time entries either solely entail or at the very least discuss researching "bad faith conduct." Yet, Plaintiff did not bring a claim under Florida's Bad Faith Statute, section

---

[9] The 9.7 hours reflect the hours billed as a non-attorney.

624.155, Florida Statutes, nor could it have brought such a claim.  Section 624.155, Florida Statutes, specifically states that "[a] surety issuing a payment or performance bond on the construction or maintenance of a building or roadway project is not an insurer for purposes of subsection (1)."  § 624.155(9), Fla. Stat. (2022).  Plaintiff could not have brought a bad faith claim against Defendant as Defendant was only a surety not an insurer under that section.  Additionally, Judge Ruiz's thorough order, [DE 146], does not mention "bad faith," which further illustrates it was not an issue in the trial.  Given Conrad & Scherer, LLP's experience in the legal field and the plain text of the statute, anything more than two hours billed on this issue is unreasonable and should not be recoverable.

Fourth, Defendant argues Conrad & Scherer, LLP's time spent in connection with "fraud on creditors," "bankruptcy," and "insolvency" should not be recoverable because they were issues not raised in this case.  [DE 158] at 26.  The Court will not address whether these entries were reasonable in this case as it appears from the time sheets that whenever these issues were billed, they were done so in conjunction with other tasks in impermissible block-billing.  Therefore, I have already considered reductions for these hours when addressing Conrad & Scherer, LLP's block-billing.

Because Conrad & Scherer, LLP's billing entries are not egregious or outside the realm of reasonableness, I do not find a 50% across-the-board reduction necessary.  However, there are several issues with their timesheets regarding block-billing, unnecessary research, and the performing of ministerial clerical tasks.  Consequently, a 25% across-the-board is appropriate.[10]

The following graph reflects the reductions to Conrad & Scherer, LLP's hours:

---

[10] Though notably less voluminous than Smith Currie's timesheets, an across-the-board reduction is more judicially efficient in this case due to the difficulty in going line-by-line through 90 hours and approximately 50-time entries.

| Name | Requested Amount | Adjusted Amount |
|------|------------------|-----------------|
| William Scherer, Jr. | 71.8 | 53.9 |
| Kirk vonHilsheimer | 14.9 | 11.2 |
| Alejandro Maya | 1 | 0.7 |
| Edd Kreiling | 2 | 1.5 |

Last, Plaintiff seeks to recover 11.7 hours that Kelley Kronenberg billed.  Defendant contends Plaintiff is not entitled to recover any of the hours billed.  Upon review, the Court agrees with Defendant's contention, and Plaintiff should not recover any of the 11.7 hours Kelley Kronenberg billed.

"A firm may be compensated for work performed by separate attorneys on the case so long as the attorney's efforts are not unreasonably duplicative."  *Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1314 (S.D. Fla. 2004).  Additionally, "[w]here time entries are so vague that a court cannot discern the nature of the legal services rendered, the time should be disallowed."  *Flagstar Bank, FSB v. Hochstadt*, No. 08-80795-CIV, 2011 WL 13225295, at *6 (S.D. Fla. Aug. 25, 2011), *report and recommendation adopted,* 2011 WL 13225155 (S.D. Fla. Nov. 4, 2011).

Here, attorney Silver's five separate time entries – totaling 9.7 hours – are duplicative and vague.  Each entry consists of Silver reviewing "background materials," or conducting "review and analysis of various documents and issues."  *See* [DE 153–3] at 16.  None of these entries explain which issues or documents he is analyzing or reviewing.  This lack of detail is particularly troublesome given that Silver's work came entirely after the trial on top of work by a significant number of attorneys already on the case.  The records provide no explanation differentiating Silver's work from that of the attorneys at Smith Currie and Conrad & Scherer, LLP or demonstrating that it was non-duplicative.  Additionally, the two hours paralegal Aldama billed

were entirely clerical, as they consisted of "review of docket and preparation of document binder for attorney review," [DE 153–3] at 16, and are therefore not recoverable.  Accordingly, Plaintiff should not recover any of 11.7 hours that Kelley Kronenberg billed.

| Name | Requested Amount | Adjusted Amount |
|---|---|---|
| James Silver | 9.7 | 0 |
| Roxanna Aldama | 2 | 0 |

### C.  Lodestar

Once the 10% reduction is applied to Smith Currie's attorneys and non-attorneys the total award for each individual's billed time is as follows:

| Name | Adjusted hours | Adjusted Hourly rate | Total Amount |
|---|---|---|---|
| Joseph R. Young | 472.7 | $450.00 | 472.7*$450.00= $212,715.00 |
| Cameron Alexander | 419.4 | $325.00 | 419.4*$325.00=$136,305.00 |
| Kayla M. Wong | 12.5/9.7 | $250.00/$125.00 | 12.5*$250.00=$3,125.00 9.7*$125.00=$1,212.50 |
| John M. DeJager | 3 | $350.00 | 3*$350.00=$1,050.00 |
| Peter K. Buckley | 0.9 | $325.00 | 0.9*$325.00=$292.50 |
| Christian Alvarez | 15.7 | $125.00 | 15.7*$125.00=$1,962.50 |
| Loraine Cherubin | 19.8 | $125.00 | 19.8*$125.00=$2,475.00 |
| **Total** | | | **$359,137.50** |

Once the 25% reduction is applied to Conrad & Scherer, LLP's attorneys and non-attorneys the total award for each individual's billed time is as follows:

| Name | Adjusted hours | Adjusted Hourly rate | Total Amount |
|---|---|---|---|
| William Scherer, Jr. | 53.9 | $700.00 | 53.9*$700.00= $37,730.00 |
| Kirk vonHilsheimer | 11.2 | $300.00 | 11.2*$300.00=$3,360.00 |
| Alejandro Maya | 0.7 | $125.00 | 0.7*$125.00=$87.50 |
| Edd Kreiling | 1.5 | $125.00 | 1.5*$125.00=$187.50 |
| **Total** | | | **$41,365.00** |

As discussed above, the Court will reduce all 11.7 hours Kelley Kronenberg's attorneys and non-attorneys billed thereby making the total award $0.00.  Therefore, the total amount of

attorneys' fees Plaintiff should recover after calculating the lodestar for all three firms is $400,502.50.

In arriving at this number, the Court considered:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Neptune Designs, Inc.*, 469 F.3d at 1359 n.1.  This case was heavily litigated and went to a bench trial.  The overarching issue was not extremely difficult but required knowledge on surety agreements and subcontracts.  Additionally, the attorneys' fees were all fixed, which Plaintiff already paid in full,[11] and the attorneys secured the total amount of the Performance Bond.  Thus, an award of $400,502.50 is appropriate in this scenario.

## III.    Non-Taxable Costs

Plaintiff seeks to recover an additional $5,118.64 in non-taxable costs and expenses.  [DE 153] at 4–5.[12]  Those expenses are broken down as follows:

| Description | Amount |
|---|---|
| Travel and parking for hearings and trial | $728.51 |
| Hotel for Trial | $1,523.43 |
| Mediation | $2,365.00 |
| Copy/Plans fees | $71.04 |
| Printing fees | $299.56 |
| Public records request fee | $15.45 |
| Courier fees | $115.65 |

---

[11] Up until September 25, 2023.

[12] Plaintiff sought taxable costs by separate motion.  [DE 148].  The court addressed that motion in a separate Report and Recommendation.  [DE 155].

| | |
|---|---|
| **Total** | $5,118.64 |

Absent explicit statutory or contractual authorization, courts may not grant a prevailing party costs and expenses outside of 28 U.S.C. § 1821 and § 1920. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). In this instance, the contractual language does not provide for the costs and expenses Plaintiff requests. The contract mandates that "the non-prevailing party shall be liable for all . . . attorney's fees . . . and court costs incurred by the prevailing party at all levels of proceedings." [DE 129–5] at 9. The contract provides for "fees" and "court costs." It does not explicitly state that the prevailing party shall recover attorneys' costs and expenses of the type sought here. *Cf. AmeriPath, Inc. v. Wetherington*, No. 10-60766-CIV, 2011 WL 3475367, at *5 (S.D. Fla. Aug. 9, 2011) (finding agreement between the parties entitled the prevailing party to attorneys' fees and costs when agreement stated "*the prevailing party* shall receive and the unsuccessful party shall pay all costs, fees and expenses, including attorney's costs, fees and expenses, incurred in enforcing its rights under the Agreement, including costs, expenses and fees with respect to trials"). Nor do these costs obviously qualify as "dispute procedure costs" mentioned in another section of the contract. [DE 129–5] at 10. As a result, Plaintiff should not recover its claimed non-taxable costs.[13]

---

[13] Defendant states Plaintiff is entitled to some of the mediation fee. However, section 627.428, Florida Statutes, does not provide for mediation costs and mediation expenses are outside the parameters of 28 U.S.C. § 1920. *See Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285, 1289 (11th Cir. 1983); *Garcia v. Caceda*, No. 10-23795-CIV, 2012 WL 4378100, at *4 (S.D. Fla. Sept. 25, 2012).

IV.    **Interest Claims**

A.  **Prejudgment Interest on Damages**

Plaintiff requests prejudgment interest on its damages of $248,000, calculated at 18% from

the date of Defendant's breach on October 22, 2021, through October 25, 2023, for a total of

$89,646.90.  [DE 153] at 5.  Defendant disagrees as to both the interest rate and the period during

which prejudgment interest should accrue.  "In federal diversity actions, pre-judgment interest is

governed by state law . . . ."  *Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1192 (11th Cir.

2023).  Plaintiff argues that the contract that the Performance Bond incorporated permits interest

"at the maximum rate permitted by law."  For support, Plaintiff points to the following clause in

the contract:

> Subcontractor shall be liable to GULF for any and all damages, consequential and
> otherwise, arising out of any breach of this Agreement by Subcontractor.  Any
> advances made by GULF pursuant to the terms of this Agreement shall bear interest
> from the date advanced at the maximum rate permitted by law.

[DE 129–5] at 5.  The maximum interest rate permitted by law in Florida is 18%.  § 687.02(1),

Fla. Stat. (2022).

Defendant asserts – as it had above – that the Performance Bond (not the subcontract)

governs and that the Performance Bond does not mention interest rates.  In turn, Defendant argues,

section 55.03, Florida Statutes, governs the rate of prejudgment interest.  Additionally, Defendant

argues that, even applying the contract language on which Plaintiff relies, Plaintiff did not

"advance" any payments to which that provision would apply.

At the outset, and as discussed previously, the Performance Bond incorporates the contract

between Plaintiff and Therma Seal.  *See Fortune Const. Co.*, 320 F.3d at 1275; [DE 146].

However, Plaintiff fails to meet its burden of showing that the sum it was awarded constitutes an

"advance" made by Plaintiff within the parameters of the subcontract.  In its Motion and Reply,

Plaintiff makes no effort to define what constitutes an "advance" or explain how the damages it received constitute an "advance." Plaintiff's Reply further fails to address Defendant's contention that Plaintiff had not advanced any money for remedial work and thus did not make any "advances" within the meaning of the subcontract. Plaintiff's Reply merely contends that the paying of attorneys' fees was an "advance" (albeit without elaboration as to how attorney's fees related to the type of "advance" described in this provision). Without further argument, the Court cannot conclude that the provision Plaintiff cites applies. Instead, the Court must apply the interest rate set forth in section 55.03, Florida Statutes. Moreover, as discussed further below, prejudgment interest only accrues through the date of judgment. *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1321 (11th Cir. 2007) ("[P]rejudgment interest accrues until the date of the judgment after which postjudgment interest begins to accrue."). Thus, Plaintiff is entitled to prejudgment interest starting from October 22, 2021 (the date both parties agree the initial breach occurred) to August 30, 2023 (the date the Court entered final judgment in Plaintiff's favor). *See Fortune Const. Co.*, 320 F.3d at 1279 ("Prejudgment interest in an action for breach of contract is allowable from the date the debt is due."). Following the formula prescribed in section 55.03, Florida Statutes, Plaintiff should recover $23,590.22 in prejudgment interest.

### B. Post-judgment Interest

Plaintiff incorrectly asserts it is entitled to post-judgment interest at the rate of 18%. "In awarding postjudgment interest in a diversity case, a district court will apply the federal interest statute, 28 U.S.C. § 1961(a), rather than the state interest statute." *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 572 n.4 (11th Cir. 1991). The parties are free, however, to contract around § 1961 as long as the contract language is "clear, unambiguous, and unequivocal." *Walker*, 59 F.4th at 1195.

26

For the same reasons discussed above, despite Plaintiff's argument that the contract provision supplants § 1961, the plain text of the provision is anything but "clear, unambiguous, and unequivocal." The provision only states that "[a]ny advances made by [Plaintiff] pursuant to the terms of this Agreement shall bear interest from the date advanced at the maximum rate permitted by law." Again, the term "advances" remains undefined and there is no mention of whether the parties intended to have that rate apply to post-judgment interest.

On the other hand, the Court's final judgment specifically states that "[p]ost-judgment interest shall accrue on this Judgment pursuant to 28 U.S.C. § 1961." [DE 147]. Plaintiff obtained final judgment in its favor on August 30, 2023. *Id.* Consequently, Plaintiff is entitled to post-judgment interest beginning on August 30, 2023, at the rate promulgated in 28 U.S.C. § 1961.

### C. Interest on Attorneys' Fees

Plaintiff is entitled to interest from Defendant on its attorneys' fees award. However, Plaintiff is incorrect in asserting that the entitlement occurred on October 22, 2021, and that the interest rate is 18%. Plaintiff was not entitled to attorneys' fees, under either the statute or the contract incorporated into the Performance Bond, until it became the "prevailing party." *See* [DE 129–5] at 5 ("[I]n the event arbitration proceedings or litigation is initiated by either party, the non-prevailing party shall be liable for . . . attorney's fees. . . incurred by the prevailing party . . . ."); § 627.428(1), Fla. Stat. ("Upon the rendition of a judgment . . . the trial court . . . shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."). Plaintiff did not become the "prevailing party" until August 30, 2023. Therefore, interest on the attorneys' fees only began accruing on that date. *See Butler v. Yusem*, 3 So. 3d 1185, 1186–87 (Fla. 2009) (holding that portion of plaintiff's attorney's fees stemming

from prevailing party provision in contract did not warrant prejudgment interest because his entitlement did not arise until he became a prevailing party). Regarding the interest rate, for the reasons previously stated above, § 1961 dictates the rate. Therefore, Plaintiff should recover post-judgment interest on its attorneys' fees starting from August 30, 2023, at the interest rate mandated by § 1961.

**CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion, [DE 153], be **GRANTED-IN-PART and DENIED-IN-PART** and that the District Court award Plaintiff **$400,502.50** in attorneys' fees, **$23,590.22** in prejudgment interest, and post-judgment interest accruing from August 30, 2023, at the rate promulgated in § 1961.[14]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 8th day of January 2024.

*Jared Strauss*

**Jared M. Strauss**
**United States Magistrate Judge**

---

[14] On January 3, 2024, Plaintiff filed a notice of partial satisfaction of judgment acknowledging Defendant has provided Plaintiff with the principal amount of $248,000.00 in damages that the Court's Final Judgment awarded it. [DE 168].